UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GERALD NOFSINGER,

       Plaintiff,                         Hon. Janet T. Neff

v.                                          Case No. 1:09-CV-29

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/


## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 52 years of age at the time of the ALJ's decision and 51 years of age at the time his insured status expired. (Tr. 28-29, 71). He completed one year of college and worked previously as a carpenter. (Tr. 83-84, 89).

Plaintiff applied for benefits on November 3, 2004, alleging that he had been disabled since December 18, 2001, due to a neck injury. (Tr. 71-76, 82). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 30-70). On August 6, 2007, Plaintiff appeared before ALJ Janice Bruning, with testimony being offered by Plaintiff and vocational expert, Paul Delmar. (Tr. 822-44). In a written decision dated August 28, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 21-29). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2006. (Tr. 23). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

In August 2000, Plaintiff was diagnosed with an osteophyte at C5-C6 causing "spinal and left C6 root compression" and ulnar neuropathy at the left elbow. (Tr. 768). On August 31, 2000, Plaintiff underwent an anterior cervical discectomy with fusion at C5-C6 with left ulnar nerve transposition. (Tr. 768-70, 780-88). X-rays of Plaintiff's cervical spine, taken on December 18, 2001, revealed "post surgical changes[, but] [o]therwise no acute abnormalities." (Tr. 795-97).

On June 3, 2004, Plaintiff was examined by Physician's Assistant, Frank Aguayo. (Tr. 494-95). Plaintiff reported that he had been experiencing neck pain for the past fourteen months. (Tr. 494). Specifically, Plaintiff reported experiencing bilateral arm weakness and "neck pain with right neck rotation, also with walking." (Tr. 494). An examination of Plaintiff's neck revealed no evidence of swelling or obvious deformity. (Tr. 494-95). Romberg testing[1] was negative and Plaintiff exhibited 5/5 strength in his upper extremities with normal range of motion. (Tr. 495). X-rays of Plaintiff's cervical spine revealed "a fusion device bridging C5-C[6], otherwise no acute changes." (Tr. 495).

On July 19, 2004, Plaintiff was examined by Dr. Benjamin Young. (Tr. 490-91). An examination of Plaintiff's neck revealed "full rotational range of motion" and "full" range of neck flexion. (Tr. 491). Plaintiff "had some limitation with extension of the neck secondary to pain." (Tr. 491). Plaintiff also exhibited "pain with palpation over the bilateral trapezius muscles" and "tenderness to palpation over the spinous processes of the lower [cervical] spine." (Tr. 491).

---

[1] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on January 13, 2010). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

Plaintiff exhibited 5/5 strength in his upper extremities, with no evidence of neurologic or sensation deficit. (Tr. 491).

On October 4, 2004, Plaintiff participated in an MRI examination of his cervical spine, the results of which revealed "narrowing of the spinal canal" at C5-C6 and "disc herniations at other levels." (Tr. 232-33). On October 20, 2004, Plaintiff underwent "C5-C7 posterior instrumented fusion with iliac crest bone grafting" and rod placement. (Tr. 496-98).

On October 27, 2004, Plaintiff reported that his neck pain "is much improved" and "well controlled" with medication. (Tr. 192). Plaintiff was instructed to continue physical therapy. (Tr. 192). On November 1, 2004, Plaintiff reported that he was "doing well" with "no complaints." (Tr. 191). X-rays of Plaintiff's cervical spine, taken on December 13, 2004, revealed "excellent maintenance of the hardware with what appears to be actually increased consolidation of [Plaintiff's] anterior graft." (Tr. 515).

On April 18, 2006, Plaintiff was examined at the Gaylord Veteran's Administration Outpatient Clinic. (Tr. 651-53). Plaintiff reported that he was experiencing increased neck pain with numbness and tingling in his left arm. (Tr. 651). Plaintiff rated his neck pain as 5/10, but also reported that he was not taking any pain relief medication. (Tr. 651). Plaintiff exhibited limited range of neck motion, but range of motion testing was otherwise normal. (Tr. 653). He exhibited 5/5 strength in his extremities without evidence of abnormality. (Tr. 653). The results of an EKG examination were also normal. (Tr. 653). Plaintiff was diagnosed with neck pain. (Tr. 653).

On August 8, 2006, Plaintiff was examined by Dr. Joel Beltran. (Tr. 675-77). Plaintiff reported that he was experiencing increased pain in his neck and left upper extremity. (Tr. 675). Plaintiff exhibited 5/5 strength in his lower extremities and right upper extremity. (Tr. 676).

5

An examination of Plaintiff's left upper extremity revealed "minimal weakness" with "pain in the shoulder and neck area." (Tr. 676). Plaintiff exhibited "decreased" range of motion in his left shoulder girdle musculature with increased pain with movement. (Tr. 676-77). Plaintiff exhibited multiple trigger points in his cervical spine and left shoulder girdle musculature. (Tr. 677). A sensory examination revealed "decreased sensation in the lateral aspect of [Plaintiff's] left upper extremity as well as in [his] left hand." (Tr. 677). The doctor scheduled Plaintiff for an MRI "to assess the stability of the cervical spine." (Tr. 677).

On October 4, 2006, Plaintiff reported to an emergency room complaining of chest pain. (Tr. 660-61). The results of a physical examination were unremarkable. (Tr. 660). X-rays of Plaintiff's chest revealed "no acute intrathoracic process." (Tr. 670). Plaintiff underwent a catheterization and arteriography procedure, the results of which revealed: (1) "diffuse three-vessel disease with total occlusion of the circumflex and subtotal occlusion of a diffusely diseased right coronary artery," (2) mild disease in the left anterior descending coronary artery, and (3) abnormal left ventricular function. (Tr. 690-92). It was determined that Plaintiff suffered an acute myocardial infarction. (Tr. 682-83). Plaintiff subsequently underwent angioplasty and stenting to both the left circumflex and right coronary artery. (Tr. 700-05).

On October 18, 2006, Plaintiff reported to an emergency room complaining of chest discomfort. (Tr. 705-10). Plaintiff reported that he had been experiencing "transient episodes of nonexertional chest discomfort" for which nitroglycerin provided only "questionable benefit." (Tr. 705). The results of a physical examination were unremarkable. (Tr. 706). Plaintiff underwent the following procedures: (1) left heart catheterization, (2) left and right coronary artery study, and (3) left ventriculography. (Tr. 708). The results of these examinations revealed: (1) normal left

ventricular hemodynamics, (2) abnormal left ventriculogram demonstrating inferior wall hypokinesis and "severely reduced" ejection fraction, (3) mild proximal left anterior descending coronary artery disease, (4) widely patent stent in the proximal coronary artery, and (5) patent stenting throughout the right coronary artery with "only mild irregularity." (Tr. 709). X-rays of Plaintiff's chest revealed no evidence of acute disease. (Tr. 711).

On November 15, 2006, Plaintiff participated in an lower extremity arterial study, the results of which were "normal" with "no significant peripheral arterial disease." (Tr. 726).

On November 20, 2006, Plaintiff participated in an MRI examination of his cervical spine, the results of which revealed no evidence of cord or signal abnormality. (Tr. 749-50).

On January 10, 2007, Plaintiff participated in an echocardiogram examination, the results of which revealed: (1) significant improvement in left ventricle function, (2) mild aortic insufficiency, and (3) mild mitral insufficiency. (Tr. 720-21). The doctor observed that Plaintiff's heart "has improved in strength." (Tr. 717).

On January 12, 2007, Plaintiff was examined by Dr. Daniel Orringer. (Tr. 759-60). Plaintiff reported that he was experiencing neck pain which radiates into his left upper extremity. (Tr. 759). Plaintiff reported that his pain medication takes the "edge off [his] pain but does not relieve it completely." (Tr. 759). Plaintiff denied experiencing weakness in his left upper extremity, but noted that he experienced "pain with any heavy lifting." (Tr. 759). An examination of Plaintiff's left upper extremity revealed 5/5 strength, but "inconsistent sensory loss." (Tr. 760). An electromyographic examination revealed no evidence of compressive neuropathy. (Tr. 760). The doctor further reported that Plaintiff's "hardware appears to be in good position both anteriorly and posteriorly and his vertebrae have fused nicely both anteriorly and posteriorly." (Tr. 760). Dr.

7

Orringer concluded that there "is no indication for further neurosurgical intervention." (Tr. 760). Plaintiff was instructed to continue taking his oral pain medication as needed. (Tr. 760).

On May 14, 2007, Plaintiff was examined by Dr. Todd Myers. (Tr. 799-801). Plaintiff reported that he was experiencing right sided chest wall pain. (Tr. 799). Plaintiff exhibited "tenderness with deep inspiration," but the results of an examination were otherwise unremarkable. (Tr. 799). Plaintiff also reported that "his breathing has improved." (Tr. 799). Plaintiff also reported that he was not taking his cholesterol medication. (Tr. 800).

On July 25, 2007, Plaintiff participated in a consultive examination conducted by Dr. Benjamin Bruinsma. (Tr. 819-21). Plaintiff reported that he was experiencing "discomfort" in his neck and upper extremities. (Tr. 820). Plaintiff reported that his pain is aggravated by cold weather, weather changes, cervical extension, cervical rotation, cervical flexion, and lifting more than 8 pounds. (Tr. 820). Plaintiff exhibited 4+/5 strength in his upper extremities, but limited range of neck motion. (Tr. 821). Hoffman's sign[2] was negative. (Tr. 821). The doctor concluded that Plaintiff's ability to work was subject to the following limitations: (1) no static neck positioning, (2) no repetitive neck positioning, (3) no work over shoulder level, and (4) no lifting more than 5 pounds." (Tr. 821). The doctor further stated that he did not feel that Plaintiff "would be able to work more than four hours out of an eight-hour workday." (Tr. 821).

---

[2] Hoffman's sign is an indicator of a number of neurological conditions including cervical spondylitis, other forms of spinal cord compression, and multiple sclerosis. *See* Hoffman's Sign, available at, http://www.mult-sclerosis.org/Hoffmanssign.html (last visited on January 13, 2010).

**ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that as of the date his insured status expired, Plaintiff suffered from (1) status post cervical spine fusions with degenerative changes with left radiculopthy; (2) chronic obstructive pulmonary disease; and (3) status post myocardial infarction, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 23-24). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 28-29). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[3]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[4] subject to the following limitations: (1) he can never climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs; (2) he can only occasionally balance, stoop, crouch, kneel, and crawl; (3) he requires a sit-stand option at will; (4) he must avoid vibrations affecting his upper body and arms; (5) he must also avoid concentrated exposure to pulmonary irritants; and (6) he can use his non-dominant left shoulder only frequently.

---

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

(Tr. 24). After reviewing the relevant medical evidence, the undersigned concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Paul Delmar.

The vocational expert testified that there existed approximately 6,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 840-41). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number).

11

a. The ALJ Properly Assessed the Medical Evidence

As noted above, Dr. Bruinsma, following a single consultive examination of Plaintiff, expressed an opinion concerning Plaintiff's ability to perform work activities that is inconsistent with the ALJ's RFC determination. The ALJ declined to afford significant weight to Dr. Bruinsma's opinion. Plaintiff asserts that the ALJ failed to properly assess Dr. Bruinsma's opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

First, because Dr. Bruinsma examined Plaintiff on only one occasion his opinion is entitled to no special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 571-72 (6th Cir. 1989); *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006). Moreover, as the ALJ observed, Dr. Bruinsma's opinion was inconsistent with substantial evidence of record including the results of the doctor's own examination. (Tr. 26-28). Furthermore, Dr. Bruinsma did not examine Plaintiff until more than six months after the expiration of his insured status. In this respect, the Court notes that the doctor did not assert that his opinion concerned Plaintiff's condition at any date prior to the date of his actual examination of Plaintiff. In sum, the ALJ articulated good reasons, supported by substantial evidence, for discounting Dr. Bruinsma's opinion.

b. The ALJ's Properly Assessed Plaintiff's RFC

As Plaintiff correctly notes, Social Security Ruling 96-8p provides that in determining a claimant's RFC, the ALJ must "assess [the claimant's] work-related abilities on a function-by-function basis." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *1 (S.S.R., July 2, 1996). Plaintiff asserts that the ALJ erred by failing to assess his abilities on a function-by-function basis.

As the Sixth Circuit has recognized, while a "function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir., Mar. 4, 2002) (citation omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* (citation omitted). The ALJ discussed at length the evidence of record and how such supported her RFC determination, which as previously noted is supported by substantial evidence.

Plaintiff also asserts that the ALJ "played doctor" when she evaluated the evidence concerning Plaintiff's cardiac condition. There is no indication in the record that the ALJ made her own independent medical findings or substituted her judgment for that of Plaintiff's care providers. *See Simpson v. Comm'r of Soc. Sec.*, 2009 WL 2628355 at *12 (6th Cir., Aug. 27, 2009) (observing that an ALJ cannot "play doctor" and make independent medical findings or substitute their own judgment for that of Plaintiff's care providers). The ALJ simply evaluated the evidence before her, resolving any conflicts therein, to arrive at Plaintiff's RFC. As Defendant correctly observes, the burden rested with Plaintiff to submit evidence in support of his claim of benefits. *See* 20 C.F.R.

§ 404.1512. Furthermore, there is nothing in the record to suggest that a consultative examination was necessary or even requested by Plaintiff.

In sum, the undersigned discerns no error in the ALJ's RFC determination.

  c.  The ALJ Properly Assessed Plaintiff's Credibility

In assessing Plaintiff's credibility, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (Tr. 27). Plaintiff asserts that the ALJ failed to give proper weight to his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ examined the record in great detail and engaged in a lengthy discussion as to why she found Plaintiff less than credible. As the ALJ correctly determined, the objective medical evidence does not support Plaintiff's subjective allegations of disabling pain and limitation. (Tr. 25-27). The undersigned further notes that none of Plaintiff's care providers imposed upon Plaintiff limitations that were inconsistent with the ALJ's RFC determination. In sum, the

undersigned concludes that there exists substantial evidence to support the ALJ's credibility determination.

  d.  The ALJ Properly Relied on the Vocational Expert's Testimony

  Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy her burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 6,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions she posed to the vocational expert, the ALJ properly relied upon his response thereto.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 2, 2010

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge